# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL HARDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05 C 5800 |
| | ) | |
| VILLAGE OF FOREST PARK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| THE BOARD OF FIRE AND POLICE | ) | |
| COMMISSIONERS OF THE VILLAGE | ) | |
| OF FOREST PARK, | ) | |
| | ) | |
| Intervenor. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Harder brought suit against defendants Village of Forest Park, Mayor Anthony Calderone, James Ryan, Sally Cody and Michael Cody, for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, and for violations of his First, Fifth and Fourteenth Amendment rights under 42 U.S.C. § 1983. Essentially, plaintiff argues that based on his filing of a sexual harassment claim and political campaign activity, defendants retaliated against him in various ways, culminating in a termination hearing in front of the Board of Fire and Police Commissioners of the Village of Forest Park ("Board").[1] Defendants Calderone and Cody have filed individual motions to dismiss the claims against them. For the reasons stated herein, we grant Calderone's and Cody's motion to dismiss plaintiff's Title VII and due process claims as against them. We deny the remainder of defendants' motions to dismiss.

---

[1] On November 14, 2005, we granted the Board's petition to intervene in this action.

## BACKGROUND

In reviewing motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6), we accept the complaint's well-pleaded factual allegations as true, including the

inferences reasonably drawn from them. McDonald v. Household Intern., 425 F.3d 424, 425

(7th Cir.2005); Patel v. City of Chicago, 383 F.3d 569, 572 (7th Cir.2004). Therefore, we take

the following facts from plaintiff's complaint.

Plaintiff was hired as a police officer by the Village of Forest Park in 1983. Nine years

later, plaintiff, along with two female officers, filed charges of employment discrimination with

the Equal Employment Opportunity Commission ("EEOC"), naming Forest Park as the

respondent. The charges included allegations of sexual harassment and sexual assault

committed by then Police Chief Edward Pope and then Deputy Chief Michael Cody. Plaintiff,

along with the other two complaining officers, filed suit in federal court on October 12, 2002,

against the Department of Police and Village of Forest Park. Plaintiff's action was settled in

January 2004.

Because of the filing of such complaints, plaintiff alleges that he has been the victim of

retaliation since October 2003. Examples of retaliation include being called a "trouble maker"

and "snitch" (1st am.cplt, at ¶ 19), and being warned to "quit stirring the boat" and "not rock

the boat" (id., at ¶ 20), in response to plaintiff's concerns about excessive force used by some

fellow officers. According to his complaint, defendant Ryan issued plaintiff a written

reprimand for providing false information in connection with an officer's alleged use of

excessive force (id., at ¶ 23), and issued plaintiff a citizen complaint comprised of fabricated

facts, without giving plaintiff an opportunity to respond (id., at ¶ 24). Additionally, plaintiff

was not fully reimbursed for spending on police business (id., at ¶ 26), suspended for his

actions in responding to a 911 call (*id.*, at 27), denied training opportunities (*id.*, at ¶ 29), and faced fabricated charges of improper conduct (*id.*, at 30).

On January 31, 2005, plaintiff requested protected medical leave under the Family Medical Leave Act for a serious health condition (*id.*, at ¶ 31). Such leave was granted on February 5, 2005, and continued until April 16, 2005, when plaintiff returned to work (*id.*, at ¶ 32, 37). In April 2005, plaintiff campaigned for Calderone's political opponent (*id.*, at 34), which resulted in defendant Sally Cody's call to Officer Michael O'Connor to request that O'Connor testify against plaintiff in a disciplinary proceeding (*id.*, at ¶ 35).

In June 2005, Ryan informed plaintiff that he would be placed on unpaid administrative leave pending formal termination proceedings before the Board (*id.*, at ¶ 39). Thereafter, on August 18, 2005, Ryan filed formal disciplinary charges against plaintiff (*id.*, at ¶ 45). On September 1, 2005, the Board placed plaintiff on indefinite unpaid leave based on Ryan's charges, "including excessive absenteeism, much of which included Harder's use of protected medical leave pursuant to the Family Medical Leave Act" (*id.*, at ¶ 47). On October 7, 2005, Harder filed this action in federal court alleging retaliation in violation of Title VII, FMLA, and various constitutional rights.

Defendant Calderone brought a motion to dismiss the individual counts against him, arguing that the Title VII claim must be dismissed, and that the § 1983 claims must be dismissed or stayed pursuant to Rule 12(b)(1). Defendant Sally Cody brought a separate motion to dismiss, joining in Calderone's motion, and also arguing that any § 1983 claims against her must be dismissed pursuant to Rule 12(b)(6). We discuss each in turn.

# DISCUSSION

### Defendant Calderone

Defendant Calderone argues that any Title VII claim against him must be dismissed because he was not named as a defendant in plaintiff's EEOC action. While plaintiff indicates that he did not intend to bring a Title VII claim against Calderone, he does not wish to foreclose such an option in the future, and thus argues that Calderone may properly be named as a defendant in plaintiff's Title VII claim.

Generally, a party not named in an EEOC charge may not then be sued under Title VII. Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 126 (7th Cir.1989). Such a rule serves to notify the charged party of the alleged violation and give that party an opportunity for conciliation. *Id.* The Seventh Circuit, in Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890 (7th Cir. 1981), *cert. denied,* 455 U.S. 1017 (1982) and Schnellbaecher, however, recognized an exception to the general rule noted above. The exception applies where "'an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance.'" Schnellbaecher, 887 F.2d at 126-27 (*citing* Eggleston, 657 F.2d at 905). Plaintiff concedes that the general rule acts against him, but argues that the Eggleston exception applies to this case.

We disagree. While plaintiff's argument that, as Mayor of Forest Park, Calderone was "in a position to receive notice of the EEOC complaint that made reference to his retaliation against Daniel Harder" (plf's resp. at 5), is somewhat persuasive, it is insufficient to bring the case within the ambit of the Eggleston exception. *See, e.g., id.,* at 127 ("Although [defendant] HSSI had notice of the charges against Baskin, it did not thereby have any notice of any

charges against *it*, nor did it have any opportunity to conciliate on its own behalf") (emphasis in original); <u>Bright v. Roadway Services, Inc.</u>, 846 F.Supp. 693, 698 (N.D.Ill.1994). In this case, Calderone notes that although he was called as a witness in plaintiff's EEOC case against Village of Forest Park, he was unable to lodge a single objection and plaintiff's counsel successfully objected to his participation in the hearing. Plaintiff has introduced no evidence that Calderone had any ability to conciliate on his own behalf, and therefore the <u>Eggleston</u> exception does not apply.[2] The facts of this case are analogous to those in <u>Allen v. City of Chicago</u>, 828 F.Supp. 543 (N.D.Ill.1993). In <u>Allen</u>, the court found that although Mayor Daley and Commissioner Carr had actual or constructive knowledge of plaintiffs' Title VII charges, such was insufficient to fall within the <u>Eggleston</u> exception. The court stated, "even with such knowledge of individual charges, it is clear that neither Daley nor Carr had any notice of any charges against *them*...[and] plaintiffs [did] not claim that either Daley or Carr was given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Id.*, at 557 (emphasis in original). Like the plaintiff in this case, plaintiffs in <u>Allen</u>, if successful, could recover the full measure of available relief against the remaining defendant. Therefore, we dismiss plaintiff's Title VII claims against defendants Calderone and Cody.

Next, Calderone argues that plaintiff's § 1983 claim for violations of his First, Fifth, and Fourteenth Amendment rights is premature pending conclusion of the currently ongoing Board hearings. Calderone suggests that plaintiff's "rank speculation that he 'expect[s]' that the Board will terminate him" (Calderone's motion at 6) is insufficient to state an injury redressable by this court. Alternatively, Calderone asserts that we must abstain from hearing

---

[2]Although Calderone's name appeared several times in plaintiff's EEOC complaint, most mentions derived from a third party comment regarding Calderone, and did not allege any actions personally taken by Calderone violative of plaintiff's Title VII rights.

this case under the abstention doctrine of <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

Calderone's first argument suggests that plaintiff lacks standing to bring this claim. For a plaintiff to have standing in a federal action, three requirements must be met: "(1) the party must personally have suffered an actual or threatened injury caused by the defendant's allegedly illegal conduct, (2) the injury must be fairly traceable to the defendant's challenged conduct, and (3) the injury must be one that is likely to be redressed through a favorable decision." <u>Simmons v. Interstate Commerce Commission</u>, 900 F.2d 1023, 1026 (7th Cir.1990). Calderone argues that plaintiff has not suffered actual or threatened injury, and therefore lacks standing.

Plaintiff disagrees. For support, he points to <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S.Ct. 2405 (2006). In <u>White</u>, the Supreme Court held that the Title VII anti-retaliation provision protects workers from actions "that a reasonable employee would have found...materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 126 S.Ct. at 2415 (internal quotations omitted). Plaintiff focuses on the Court's affirmation of damages for plaintiff's claim that she suffered from 37 days of suspension without pay, even though the internal review process ultimately awarded her backpay for those lost wages. The Court stated, "But White and her family had to live for 37 days without income. They did not know during that time whether or when White could return to work. Many reasonable employees would find a month without a paycheck to be a serious hardship...." *Id.*, at 2417. Contrary to plaintiff's position, however, <u>White</u> is not analogous to the case at hand. <u>White</u> specifically involved the anti-retaliation provision of Title VII. We have already held that plaintiff cannot maintain a Title VII action against Calderone. Therefore, we must determine if the same

injury is enough for a § 1983 claim for violation of plaintiff's First, Fifth or Fourteenth Amendment rights.

First, we address plaintiff's due process claim. In order to state an injury for violation of plaintiff's due process rights with respect to his employment and pay as a police officer, plaintiff must allege an "injury in fact – a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 103 (1998) (internal quotations omitted). It is unclear whether plaintiff's injury is sufficiently ripe to maintain his due process claim. It is clear, however, that the Board's determination might moot or narrow the issue and we should allow that process to do so, potentially rendering a constitutional decision unnecessary. *See* <u>Jack & Lou's, Inc. v. County of Cook</u>, 1994 WL 91963, *2 (N.D.Ill.1994) ("The issues...should in the first instance be sifted and narrowed by the state proceeding"). Therefore, at this time we dismiss plaintiff's § 1983 due process claim without prejudice.

With respect to his First Amendment claim, however, we find that plaintiff has sufficiently alleged an injury. In <u>Mosely v. Board of Educ. of City of Chicago</u>, 434 F.3d 527 (7th Cir.2006), the Seventh Circuit recently reaffirmed its holding that an injury under § 1983 is generally broader than the adverse employment action required in the anti-discrimination statutes such as Title VII. The <u>Mosely</u> court stated that "'[a]ny deprivation under color of law that is likely to deter the exercise of free speech...is actionable.'" *Id.*, at 534 (*citing* <u>Power v. Summers</u>, 226 F.3d 815, 820 (7th Cir. 2000)). Therefore, plaintiff has sufficiently alleged a First Amendment injury.

Even so, Calderone argues that we must abstain from hearing the entire § 1983 case against him based on the abstention doctrine stated in <u>Younger v. Harris</u>. In <u>Younger</u>, the

Court reaffirmed the "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.*, at 43-44. Although <u>Younger</u> concerned a request to enjoin state criminal proceedings, "[t]he principle of <u>Younger</u> is that a party to a state proceeding affecting important governmental interests must resolve the dispute in the state's preferred tribunal." <u>Nelson v. Murphy</u>, 44 F.3d 497, 501 (7th Cir.1995). Therefore, courts have extended <u>Younger</u> abstention to various civil proceedings in state court that implicate important state interests. <u>Trust & Inv. Advisers, Inc. v. Hogsett</u>, 43 F.3d 290, 294 (7th Cir.1994); <u>American Federation of State, County and Mun. Employees v. Tristano</u>, 898 F.2d 1302, 1304 (7th Cir.1990). Such expansion has included the application of <u>Younger</u> abstention in certain state administrative proceedings that are judicial in nature. <u>Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.</u>, 477 U.S. 619 (1986); <u>Trust & Inv. Advisers, Inc.</u>, 43 F.3d at 294-95.

Unlike the plaintiff in <u>Younger</u>, plaintiff here has only sought damages, rather than injunctive relief. Although the Supreme Court has yet to determine whether an action solely for damages is appropriate for <u>Younger</u> abstention (*see* <u>Deakins v. Monaghan</u>, 484 U.S. 193, 202, n6 (1988); <u>Juidice v. Vail</u>, 430 U.S. 327, 339, n16 (1977)), the plurality of circuit courts have concluded that at least in some situations, <u>Younger</u> abstention is appropriate. The Seventh Circuit declared abstention of damages actions appropriate where "a damage award would sufficiently disrupt the state proceedings that it would be akin to a declaratory judgment or because the exact claim for damages in federal court was made and denied in state court." <u>Tristano</u>, 898 F.2d at 1304. *See also* <u>Feaster v. Miksch</u>, 846 F.2d 21, 23-24 (6th Cir.1988), *abrogated on other grounds recognized by* <u>Schilling v. White</u>, 58 F.3d 1081 (6th

Cir.1995) (abstaining in an action for damages where disposition of the damages action could imply that a state conviction is or would be illegal); Guerro v. Mulhearn, 498 F.2d 1249, 1251-52 (1st.Cir.1974) (policy considerations underlying Younger and Samuels v. Mackrell, 401 U.S. 66 (1971), "require a federal court to stay its hand where disposition of the damage action would involve a ruling implying that a state conviction is or would be illegal"). Such is not the case here. Plaintiff's First Amendment claim can continue without affecting the state court proceedings at all. A finding in favor of plaintiff on such a claim would not call into question the decision of the Board or state court, regardless of its outcome. Therefore, we decline to abstain at this time.

Defendant Sally Cody

Defendant Sally Cody also brings a motion to dismiss the claims against her. As an initial matter, Cody adopts and incorporates Calderone's motion to dismiss. Because we have already determined that plaintiff cannot maintain a Title VII claim against those unnamed in his EEOC complaint, and that we lack jurisdiction to hear plaintiff's due process claim for lack of ripeness, we focus only on Cody's arguments as they relate to plaintiff's First Amendment claim.

Plaintiff's complaint asserts that "In April 2005, Sally Cody telephone[d] Officer Michael O'Connor and asked him if he would testify against Harder in a disciplinary hearing that he saw Harder passing out campaign literature while Harder was on medical leave pursuant to the Family Medical Leave Act. At that time, no disciplinary action was pending against Harder" (1st am. cplt, at ¶ 35). Plaintiff asserts that such action was taken in retaliation against him for two counts of protected speech: plaintiff's filing of a sexual harassment claim and support of two female officers in their sexual harassment claims; and

plaintiff's campaigning for Mayor Calderone's political opponent. Cody claims that plaintiff's § 1983 claim, as it relates to her, must be dismissed because plaintiff's complaint does not allege that she directly participated in the alleged violation of plaintiff's constitutional rights. Cody also argues that plaintiff's complaint fails to plead a causal nexus between Cody's actions and the alleged retaliatory conduct, and Cody is, therefore, entitled to qualified immunity. We address each argument in turn.

In order to state a First Amendment retaliation claim under § 1983, plaintiff must allege he was engaged in constitutionally-protected speech, and that defendants retaliated against him because of that speech. Vargas-Harrison v. Racine Unified School Dist., 272 F.3d 964, 970 (7th Cir.2001); Barkoo v. Melby, 901 F.2d 613, 617 (7th Cir.1990). And, because § 1983 "creates a cause of action based on personal liability and predicated upon fault...liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir.1996). See also Hildebrandt v. Illinois Dep't of Natural Resources, 347 F.3d 1014, 1039. Thus, to hold an individual liable under § 1983, the defendant must have participated directly in the alleged constitutional violation. Hildebrandt, 347 F.3d at 1039; Fanning v. Cook County, 2006 WL 385065, *2 (N.D.Ill.2006).[3]

Cody argues that even taking the complaint as true (as we must), "it fails under Seventh Circuit precedent to constitute a retaliation claim because this allegation does not demonstrate that Cody participated in any way, shape or form in the alleged retaliation" (def's brief, at 2).

---

[3] We treat plaintiff's § 1983 claim against Cody and other individual defendants as a claim against them in their individual, rather than official, capacities. Cody suggests in her opening brief that plaintiff's claim must challenge her in her individual capacity. Because plaintiff did not rebut such a suggestion in his responsive filings, we consider plaintiff's complaint as a charge against Cody in her individual capacities. That plaintiff requested punitive damages, unavailable under an official capacity suit (Hill v. Shelander, 924 F.2d 1370, 1373 (7th Cir.1991)), and brought a separate claim against the Village of Forest Park, gives further support to this conclusion.

In support of her argument, Cody points to <u>Hildebrandt</u>, a recent Seventh Circuit case in which the court granted summary judgment on behalf of defendant supervisor facing § 1983 claims for gender discrimination. The <u>Hildebrandt</u> court found that an allegation that the defendant "attended and actively participated in the March 31, 1998 meeting" did not constitute "sufficient evidence to create a triable issue of fact for a jury that [defendant] was personally involved in determining Dr. Hildebrandt's 1997 raise." 347 F.3d at 1040. Although <u>Hildebrandt</u> involved summary judgment analysis, "In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must include in his complaint allegations that the individual is involved in the constitutional deprivation." <u>Harrison v. City of Chicago</u>, 2005 WL 3542576, *3 (N.D.Ill.2005). *See also* <u>Eades v. Thompson</u>, 823 F.2d 1055, 1063 (7th Cir.1987) (affirming the dismissal of individual officers on a motion to dismiss plaintiff's Eighth Amendment claims, stating that "[e]ach individual defendant can be liable only for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group").

Plaintiff briefly argues that his single allegation does allege "specific participation by Cody in that she investigated Harder and sought out witnesses to testify against Harder in the disciplinary charges soon to be brought two months later" (plf's resp. at 2). At this stage in the litigation, we agree that plaintiff has sufficiently alleged Cody's personal involvement in the retaliation against plaintiff. Cody brings her motion to dismiss under Rule 12(b)(6). In reviewing such a motion we must accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. <u>McDonald</u>, 425 F.3d at 425. Because FED. R. CIV. P. 8(a)(2) requires only that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," the complaint should be

dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be granted." Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir.1995). *See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Plaintiff alleged that Cody directly participated in retaliation against him by seeking testimony from Officer O'Connor for disciplinary proceedings against plaintiff. We must take that together with plaintiff's allegation that Cody, along with the other individual defendants, took actions "done with the purpose and intent of depriving Harder of the ability to exercise his right to freedom of speech..." (1st am. cplt, at ¶ 56). From those allegations it is reasonable to infer that Cody's actions constituted direct participation in retaliation against plaintiff for either his political speech and/or sexual harassment allegations.[4] *Cf.* Harris v. Board of Educ. of the City of Chicago, 2005 WL 2978736, *2 (N.D.Ill.2005) ("Since Harris has not alleged any personal involvement on the part of Duncan or Juarez in the alleged constitutional deprivations, we grant Defendants' motion for summary judgment on the Section 1983 claims brought against Duncan and Juarez").

Plaintiff also suggests that Cody is liable for her role as a supervisor, in addition to her direct participation in retaliation. The parties agree that Cody was acting in a supervisory role, although it is unclear what her role was in bringing or supporting the disciplinary

---

[4]Cody argues that because she did not have the authority to make employment or disciplinary decisions for police officers, she could not have caused the retaliation. Just because Cody did not have final decision-making power in plaintiff's termination does not necessarily mean that she did not participate in retaliating against him. *See* Soderbeck v. Burnett County, Wisconsin, 752 F.2d 285 (7th Cir.1985); Nanda v. Board of Trustees of University of Illinois, 2004 WL 432472, *20-21 (N.D.Ill.2004) (that defendant did not have final decision-making power over plaintiff's termination "in no way demonstrates that he lacked personal responsibility for depriving her of her constitutional rights by recommending the terminal contract in the first place, or by treating her unequally in other areas of her employment"). *Cf.* Hodges v. Briley, 2005 WL 241466, *3 (N.D.Ill.2005) (complaint must be dismissed where it is clearly indicated that defendant had no control over the alleged violation of plaintiff's rights).

charges against plaintiff.[5] Plaintiff is generally correct that supervisors may be liable under § 1983, where constitutional conduct occurred at the supervisor's direction or with her knowledge and consent. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir.1995) ("'[A]n official satisfies the personal responsibility requirement of section 1983...if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.' That is, he 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...'"). Because Cody's supervisory role is unclear and we have determined that plaintiff sufficiently pleaded Cody's direct participation, we need not address supervisory liability at this stage.

Next, Cody argues that plaintiff has failed to plead an affirmative link between her conduct and the alleged retaliation. Specifically, Cody suggests that the time lag between the protected speech (sexual harassment claim and political campaigning) and the alleged retaliation (disciplinary proceedings) is too attenuated to show an affirmative link. When suing an official in his individual capacity, such a causal connection is required. Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983). At this stage we believe that plaintiff has sufficiently pled a causal link. Plaintiff alleges that Cody's conduct, along with the other individual defendants, was a direct and proximate cause of mental, emotional, and financial suffering.

Cody points to Hughes v. Derwinski, 967 F.2d 1168 (7th Cir.1992), Kelly v. Municipal

---

[5]Both parties point to the testimony from the Board hearing to support their claims. We cannot, however, look beyond the four corners of the complaint in determining whether plaintiff has stated a claim. Palda v. General Dynamics Corp., 47 F.3d 872, 875 (7th Cir.1995). In 12(b)(6) analysis, documents attached to a defendant's pleadings cannot be considered without converting the motion to dismiss into a motion for summary judgment, except that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1248 (7th Cir.1994). Therefore, we will not consider the testimony.

Courts of Marion County, Ind., 97 F.3d 902 (7th Cir.1996), Benson v. Cady, 761 F.2d 335 (7th Cir.1985), and Roger Whitmore's Auto. Services, Inc., 424 F.3d 659 (7th Cir.2005), in an attempt to show that the time between the constitutionally-protected speech and the alleged retaliation was too attenuated. All four cases can be distinguished. In Hughes, a Title VII action, the court affirmed the district court's grant of summary judgment, stating that a four-month time lag between the filing of a complaint and the alleged retaliation, standing by itself, was insufficient to prove the required causal connection. 967 F.2d at 1174-75. In Kelly, the Seventh Circuit upheld a judgment for defendant, notwithstanding the verdict, stating that "the four-month delay between Kelly's decision not to work at the polls and his termination seems to undercut any inference that Kelly's withdrawal from politics was a substantial motivating factor in Mayer's decision to fire Kelly." 97 F.3d at 912. In Roger Whitmore's Auto Services, Inc., another summary judgment determination, the Seventh Circuit found that 14 months between the constitutionally-protected right and the alleged retaliation was too long to establish a causal connection. 424 F.3d at 669. All three determinations were made at a later stage in litigation, wherein plaintiffs had the opportunity to fully develop their cases through complete discovery. Prior to discovery, we allow plaintiff to plead legal conclusions and limited facts. See id., 424 F.3d 659, 669 (7th Cir.2005) (plaintiff's post hoc ergo propter hoc logic, insufficient at the summary judgment stage "might make the grade at the pleading stage"). In Benson, the only determination on a motion to dismiss, the Seventh Circuit found that plaintiff's complaint should be dismissed where the alleged retaliation occurred five months after plaintiff's constitutionally-protected speech. The Benson court, however, focused on the fact that "the allegation of retaliation appears to have been appended to the eighth amendment claim as an afterthought." 761 F.2d at 342. The court went on to note that because

"retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred." *Id.* We find that plaintiff has alleged such a chronology of events, in comparison to <u>Benson</u>, in which plaintiff merely alleged the ultimate fact of retaliation. Therefore, we find that plaintiff has sufficiently pleaded a causal nexus.

Finally, Cody argues that she is entitled to qualified immunity. A government official is protected from individual liability under § 1983 "for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Brokaw v. Mercer County</u>, 235 F.3d 1000, 1022 (7th Cir.2000) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 635, 640 (1987)).

In <u>Hilderbrandt</u>, the Seventh Circuit set forth the methodology for determining qualified immunity. Following the Supreme Court's guidance in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the court first analyzed "whether there was a constitutional violation and second whether it was clearly established, at the time the defendants took the allegedly discriminatory actions, that such actions violated the constitution" <u>Hildebrandt</u>, 347 F.3d at 1036. Taking all alleged facts as true and making all reasonable inferences in favor of plaintiff, we have already determined that Cody may have violated plaintiff's constitutional rights. We therefore turn to the second step.

To show a clearly established right, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Brokaw</u>, 235 F.3d at 1022 (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). We cannot

find, and Cody does not allege, that she was unaware that plaintiff had a right to be free from violations of his constitutionally-protected right to free speech. Such is a well-established right. Rather, Cody argues that plaintiff has failed to provide case law showing that an administrative assistant or secretary to a governmental decision-maker would be liable for such insignificant administrative duties as Cody performed. Although plaintiff has not set forth a closely analogous case, such a showing may be unnecessary. *See* Brokaw, 235 F.3d at 1022 ("a plaintiff need not always identify a closely analogous case; rather, he can establish a clearly established constitutional right by showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue"). From plaintiff's allegations it is unclear whether Cody's actions were taken in an effort to retaliate against him for his political or sexual harassment speech. Without knowing such facts, we will not dismiss the case at this stage. The Seventh Circuit, in Brokaw, gave us such guidance. The Brokaw court stated, "Here we do not know enough facts to determine where along the continuum this case falls. And given the role of specific facts, '[i]t is impossible to know which clearly established rules of law to consult unless you know what is going on.'" *Id.* (citing Elliott v. Thomas, 937 F.2d 338, 342 (7th Cir.1991)). *See also* Nanda v. Board of Trustees of University of Illinois, 2002 WL 1553330, *8 (N.D.Ill.2002) ("The evidence may not support Plaintiff's claims of sex, race or national origin discrimination, but the court has little difficulty concluding that Defendants were well aware of Plaintiff's right to be free from such discrimination"). Further, the Seventh Circuit majority, in Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir.2000), noted that the use of qualified immunity in dismissing a complaint on a 12(b)(6) motion is a "delicate matter that district courts should approach carefully." 215 F.3d at 756, n3. Judge Easterbrook, in his concurrence, went even further, stating that "Rule

12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." *Id.*, at 775. Thus, because we are unaware of the factual context of plaintiff's claims – a context he is not required to provide at this stage – we will not at this time dismiss his claims based on qualified immunity.

## CONCLUSION

For the reasons stated above, we dismiss plaintiff's Title VII claims against defendants Calderone and Cody, and dismiss his due process claims against the individual defendants, with leave to amend. We deny defendants Calderone's and Cody's motions to dismiss plaintiff's First Amendment retaliation claim.

JAMES B. MORAN
Senior Judge, U. S. District Court

Nov. 9 , 2006.