IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL HARDER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 05 C 5800 ) |
| VILLAGE OF FOREST PARK, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Harder brought suit against defendants Village of Forest Park, Anthony Calderone, James Ryan, Sally Cody and Michael Cody, for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, and for violations of his First, Fifth and Fourteenth Amendment rights under 42 U.S.C. § 1983. Defendant Calderone now moves for summary judgment as to the claims against him. For the following reasons, that motion is granted.[1]

## BACKGROUND

Since this motion only deals with a few specific claims, we will not now address the entire background of the case. Harder was a police officer in the Village of Forest Park Police Department from 1983 until his termination in 2007, rising to the rank of detective sergeant. Defendant Anthony Calderone is the Mayor of the Village of Forest Park and was so during the period in question. Defendant James Ryan is the chief of police for the village, and was so

---

[1] Calderone has also filed a motion to strike Harder's statement of material facts, arguing that they are based on inadmissible evidence. Since portions of the paragraphs in question were based on admissible evidence, and since we address the admissibility of the other evidence below, we simply deny the motion to strike as moot.

during the period in question.

Prior to 2003, Harder had been disciplined by the force three times, twice in the early 1980s for accidents with police vehicles and once in 2002 for an instance of off-duty drinking in the detective trailer with a fellow officer. In 2002, prior to Ryan's term as chief, Harder, along with two female officers, filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), naming Forest Park as the respondent. The charges included allegations of sexual harassment and sexual assault committed by then Police Chief Edward Pope and then Deputy Chief Michael Cody. On October 12, 2002, Harder filed suit in federal court against the Department of Police and Village of Forest Park. That action was settled in January 2004. Pope resigned and Ryan became the chief of police

In March 2004, Ryan authored a memorandum and initiated an investigation against Harder regarding a purported citizen complaint. Ryan memorialized the purported informal (telephone) complaint and assigned Officer Knack to investigate the matter. Knack investigated and found, according to Ryan, that the citizen had complained that Harder had been rude to her on the phone and had ignored her request to investigate a car repeatedly illegally parked near her home. Harder alleges that the citizen complaint was filed because Calderone resented Harder's sexual harassment lawsuit.

In September 2004, Harder was called to testify against Joe Abruzino, the director of the Proviso Township Mental Health Commission, in connection with sexual harassment claims brought by a woman named Nancy Brigado. At the time, Harder had been involved in the BADGE program, a community service program for children, a position for which he was paid by the police department. It was apparently at a meeting related to the BADGE program that Harder overheard the comments by Abruzino. Harder alleges that Abruzino was a close

friend of Calderone, although Calderone denies that he was. Harder informed Ryan that he was called to testify, and thereafter he ceased working with the BADGE program. The parties dispute whether Harder was excluded from the BADGE program or whether he left voluntarily. Harder alleges he was terminated from the program by Ryan and Calderone because he aided in the sexual harassment suit against Abruzino.

## DISCUSSION

Summary judgment is proper where the pleadings and evidence present no genuine issues of fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (U.S. 1986). We evaluate admissible evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). We first address Harder's assertion that Calderone's motion is premature. Rule 56 permits a defendant to seek summary judgment "at any time...on all or part of the claim." A defendant need not wait until discovery is complete to file a summary judgment motion. If Harder felt that he could not adequately respond to the motion absent more discovery, he had a remedy under Rule 56(f).[2] To avail himself of this rule, Harder needed to follow a simple procedure, "move for a continuance and submit an affidavit explaining why the additional discovery is necessary." Deere & Co. v. Funk Mfg. Co., 462 F.3d 701, 706 (7th Cir. 2006). Harder did not do so. Instead, in his memorandum in opposition to the motion, he simply stated that the motion was premature because discovery relating to the § 1983 claims had just begun. This is not sufficient. First Nat. Bank & Trust Corp. v. American Eurocopter Corp., 378 F.3d 682, 694 (7th Cir. 2004) (quoting Woods v. City of Chicago, 234 F.3d 979, 990 (7th Cir.

---

[2] Rule 56(f) states: "[S]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

2000)). Since Harder has failed to satisfy the requirements of Rule 56(f), we may proceed to rule on Calderone's motion.

Under certain circumstances, the First Amendment, as made applicable to the states through the Fourteenth Amendment, protects a public employee's right to speak as a citizen about matters of public concern. Callahan v. Fermon, 526 F.3d 1040, 1043 (7th Cir. 2008) (citing Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)). An employer may not retaliate against an employee for engaging in protected speech. Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006). "Even minor forms of retaliation can support a First Amendment claim, for they may have just as much of a chilling effect on speech as more drastic measures." Smith v. Fruin, 28 F.3d 646, 649 (7th Cir. 1994). The parties do not appear to dispute that Harder was engaging in protected speech both when he filed his sexual harassment claim against the Village and when he testified in the sexual harassment suit against Abruzino. However, Harder has failed to present any evidence that could lead a reasonable jury to conclude that Calderone participated in either of the two alleged acts of retaliation at issue here.

Harder offers this court four pieces of evidence that he argues support denial of summary judgment. First, Harder testified that in February 2004, prior to the events set forth above, he was told by Calderone that he, Harder, "was a catalyst to the (officers') sexual harassment claim. He said that I had stopped the momentum of the police department, and he said that I was no longer a friend of his administration." (2/2/06 trans. p.60). This statement would be admissible under Federal Rule of Evidence 801(d)(2) as an admission of a party opponent, despite the fact that Calderone denies making it. Contradicting testimony simply raises an issue of fact for the jury. However, while incriminating, this statement does not by itself

connect Calderone to either of the alleged acts of retaliation. Therefore, we must look at the other evidence Harder offers.

Harder next offers a statement by Ryan. Harder testified in his administrative hearing that when he told Ryan he would be testifying in the Abruzino case, Ryan screamed at him saying, "[H]ere you go again, another time when you are dealing with sexual harassment with females." (2/2/06 trans. p. 132). Harder testified that Ryan told him that Abruzino was a "strong friend and supporter of Mayor Calderone, and this would embarrass Mayor Calderone." (*Id.*). Again, this statement is admissible as an admission of a party opponent, despite the fact that Ryan denies making it. But even if Ryan had made this statement it does not address the liability of Calderone, and therefore does not create an issue of material fact. Contreras v. City of Chicago, 119 F.3d 1286, 1291 (7th Cir. 1997)("A party must show a genuine issue of material fact, meaning that the factual dispute must be outcome-determinative"). Whether or not Ryan believed Calderone would be embarrassed by Harder's testimony does not speak to what Calderone himself knew, believed or felt. Absent is any indication that Ryan had personal knowledge of the effect Harder's testimony would have on Calderone. Without personal knowledge, Ryan's statement is mere speculation and cannot implicate Calderone.[3]

The third piece of evidence Harder offers is a statement of Officer Knack. Knack was the officer assigned to investigate Harder in relation to the alleged citizen complaint. At the administrative hearing, Harder testified that Knack told him that he (Harder) "need[ed] to realize this came from across the hall from the [sic] Mayor Calderone, who is angry at [you]

---

[3] Furthermore, while Harder alleges in his complaint that Calderone was involved in his termination from the BADGE program, in his testimony he only states that he was terminated by Ryan.

for filing the sexual harassment suit." (7/20/06 trans. p.122-23). Calderone is correct that this statement is inadmissible hearsay under Rule 801. Harder argues that a party can present inadmissible evidence at the summary judgment stage if that evidence could be reduced to admissible evidence at trial through, for example, live testimony. Harder is correct that "evidence presented to defeat a summary judgment motion need not be in admissible form." Payne v. Pauley, 337 F.3d 767, 775 (7th Cir. 2003). However, "it must be admissible in content," which Harder's proffered evidence is not. Id. Even if Harder were to testify to this statement at trial, it would be inadmissible because there is no indication that it is based on Knack's personal knowledge. The same would be true if Knack testified at trial to making this statement. The only evidence that would be admissible would be testimony from Knack based on personal knowledge, that the citizen complaint did in fact come from the mayor's office. Harder has presented no such evidence. Indeed, in each of these instances plaintiff essentially contends that Calderone was displeased with him, something bad happened to him and therefore what happened must have been instigated by Calderone. In the third instance he contends that a complaint by a citizen, which was not sustained and did not result in discipline, was somehow the responsibility of the mayor. These are not reasonable inferences.

The fourth and final piece of evidence Harder offers is likewise inadmissible. Harder offers the administrative hearing testimony of Lieutenant Steven Johnson, the officer who was second in command at the time of the alleged retaliation. Johnson testified that from the time Ryan started as chief, Ryan was instructed by the mayor's office to target Harder. However, on cross examination it was revealed that Johnson had no personal knowledge of any such instruction. When asked the basis of his opinion, Johnson testified:

> Well, when Dan [Harder] filed his sexual harassment lawsuit against the village, I think it put the mayor in a very precarious position. He was forced to place his

> police chief on leave, and subsequently I don't know if he was terminated or resigned. I don't know the circumstances what Ed Pope chose to do, but I think that put Tony Calderone in a very, very difficult spot, and Tony Calderone has a very, very long memory about things, and there was absolutely no way that Dan Harder was going to escape this affront to the mayor without something happening.

This statement is mere speculation since Johnson admitted that he had no personal knowledge of any instruction from the mayor's office to target Harder. Speculation is not admissible evidence. Fed. R. Evid. 602.

So all that remains is Calderone's alleged statement to Harder. That is not enough for this court to find that a genuine issue of material fact exists as to these acts of retaliation. To the extent that Count III alleges Calderone's participation in these acts, the motion for summary judgment is granted.

But this does not end the matter. In his complaint, Harder alleged that Calderone was involved in the acts of retaliation that led to Harder's eventual termination from the force. At the close of the administrative hearing, the board rejected Harder's retaliation defense and upheld Ryan's recommendation of termination. Normally such a decision is appealed to state court. Where the state court upholds the decision of an administrative body, a plaintiff is precluded from re-litigating those same operative facts in a separate federal proceeding. This is what we referred to in an earlier opinion, though we admit the point could have been made more clearly. Harder v. Forest Park, 2007 U.S. Dist. LEXIS 41441 (N.D. Ill. June 5, 2007). However, instead of appealing the board's decision to state court, Harder amended his complaint, seeking administrative review in this court pursuant to our supplemental jurisdiction. After reviewing the board's determination we held that while a fair amount of evidence existed pointing to retaliation against Harder, we could not find that the Board's rejection of that defense was against the manifest weight of the evidence. Harder v. Forest

Park, 2008 U.S. Dist. LEXIS 36892 (N.D. Ill. May 2, 2008). Harder has not appealed that determination, making it a final judgment for purposes of collateral estoppel. Ballweg v. Springfield, 114 Ill. 2d 107, 113 (Ill. 1986); Harder, 2007 U.S. Dist. LEXIS 41441. As such, any remaining claims of retaliation against Calderone are barred and he is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Calderone's motion for summary judgment is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 18, 2008.